This is a suit seeking to recover damages for tort liability for the criminal acts of a third party. The trial court granted summary judgment in favor of the defendants, A.G. Gaston Motels, Inc. (hereinafter "Gaston"), and Otis Smith, the owner of a security service, and the plaintiff, Daniel Moye, administrator of the estate of Cheryl Denise Moye, deceased, appealed. We affirm.
On December 25, 1981, Gaston, in conjunction with radio station WENN, sponsored a teen dance at the Gaston motel premises. The dance was open to young people up to age 19 and proof of age was required by means of identification at the door. The dance was to last from 9:00 P.M. to 1:00 A.M. Four security guards under the employ of Smith were assigned to the dance pursuant to an agreement with Gaston. In addition to the security guards, WENN personnel were present to assist at the dance, including taking up money at the door and checking identification. Each young person who entered the dance was searched for alcohol, drugs, and weapons, none of which were allowed in the motel. No pass outs were permitted; thus, any person leaving and wishing to return could do so only by submitting to another search and again paying the full cost of admission.
During the course of the dance, the facility was checked periodically, as was the parking lot and the area in front of the motel, to insure that it was clear of people who were not coming in to the dance. No alcoholic beverages were served at the dance, and there were no reports of anyone at the dance drinking alcohol. One man was put out of the dance at midnight for some undisclosed disturbance. There were no other altercations or other disturbances during the dance. There had not been a single criminal incident at any prior teen dances at the Gaston motel. (There had been at least eight prior dances.) The dance ended at approximately 1:00 A.M. After the last song was played, the lights were turned on at the motel, the security guards cleared the lounge, in which the dance was held, and locked the door to the lounge. The last two security guards to leave walked Marie Pickett, a WENN radio employee, who had collected the money at the door, over to the motel office, where one of the security guards was assigned until 8:00 A.M. on the morning of December 26. Joe Murphy, a WENN employee, and his wife went to the radio station, which was located across the street from the motel. There were about 15 young people outside as the lounge entrance was locked, all of whom appeared to one of the security guards to be headed to the convenience store next to the motel or waiting for their rides home. The area was well lighted by street lights and the light from the "Motel-Restaurant" sign. Among those outside at that time were Cheryl and Daniel Moye, who were standing on the *Page 1370 
sidewalk or grass next to the sidewalk waiting for their ride home.
A group of young men, who had been at the dance and left, drove by the front of the motel, stopped, got out of their car and started mingling with the people in front of the motel. In the group was Darron Burpo. He exhibited a revolver. Tara Foster ran to the office of the motel to alert the security guard. She knocked on the door and motioned with her index finger for the security guard to "come here." She did not scream, shout, cry, talk loudly, wave her arms, or otherwise indicate any distress or alarm, nor did she say anything except "come here." She noticed that the group had driven away, so she walked back to the curb where she had been standing and resumed talking with her friends. The young men in the car drove to the front of the convenience store, where Burpo got out of the car and slapped Terrance Oliver, who was standing in the parking lot of the convenience store. Burpo was taken back to the car by his friends, and the group drove east on 5th Avenue North away from the motel. Oliver threw a soft drink bottle and hit the car as it left. Burpo leaned out of the car window and fired a shot from the revolver. The shot struck Ms. Moye, who was still standing with her brother Daniel in front of the motel, some 20 yards away. Ms. Moye died as a result of this gunshot wound. Burpo was tried and found guilty of negligent homicide.
This Court has not yet decided a case whose facts have commanded us to impose liability on a business for injuries to its invitees as a result of the criminal conduct of a third person. Petrella v. Peddler's Motor Inn Best Western,488 So.2d 497 (Ala. 1986); Simpson v. Wolf RidgeCorp., 486 So.2d 418 (Ala. 1986); Law v. OmeletteShop, Inc., 481 So.2d 370 (Ala. 1985); Ortell v.Spencer Companies, 477 So.2d 299 (Ala. 1985); Henleyv. Pizitz Realty Co., 456 So.2d 272 (Ala. 1984);Stripling v. Armbrester, 451 So.2d 789 (Ala. 1984);Latham v. Aronov Realty Co., 435 So.2d 209 (Ala. 1983); Berdeaux v. City National Bank of Birmingham,424 So.2d 594 (Ala. 1982); Parham v. Taylor,402 So.2d 884 (Ala. 1981); City of Mobile v. Largay,346 So.2d 393 (Ala. 1977).
This Court has consistently and vigorously affirmed summary judgments in favor of the defendant premises owner/employer on the issue of whether the defendant was negligent in failing to protect its invitee/employee from such crimes. Law v.Omelette Shop, Inc., supra; Ortell v. Spencer Companies, supra;Henley v. Pizitz Realty Co., supra; Stripling v. Armbrester,supra; Berdeaux v. City National Bank of Birmingham,supra.
In CIE Service Corp. v. Smith, 460 So.2d 1244, 1247
(Ala. 1984), this Court explained: "[I]t is difficult to impose liability on one person for an intentional criminal act committed by a third person."
The basis for this difficulty is the usual absence of two essential elements of proof in a negligence/wantonness action: (1) duty and (2) proximate cause. However, whether the case is decided on lack of initial legal duty or on the basis that the criminal act was an independent intervening cause which prevented any action or inaction on the part of the premises owner/employer from being the proximate cause of plaintiff's injury, the key to either is foreseeability.
It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person. Ortell v.Spencer Companies, supra, at 299; Henley v. PizitzRealty Co., supra, at 276-77; Berdeaux v. CityNational Bank, supra, at 595; Parham v. Taylor,supra, at 886. Absent a duty to protect its invitee/employee from the criminal acts, a premises owner/employer cannot be held liable for injuries and damage resulting from those criminal acts.
In the recent decision of Law v. Omelette Shop, Inc.,supra, plaintiff was assaulted while standing in front of the defendant's restaurant, after having eaten there. (In the case now before this Court, Ms. Moye was shot while standing in front of the Gaston motel after having attended a *Page 1371 
dance there.) Law sued Omelette Shop for negligence and wantonness in failing to protect her against this criminal assault, and summary judgment was granted against her. On appeal, this court affirmed, finding that under the facts Omelette Shop had no duty to protect her against the criminal acts.
In Henley v. Pizitz Realty Co., supra, plaintiff sued the owner of a parking deck where she was attacked, alleging negligence and wantonness on the part of the defendant in maintaining its security system. The trial court granted summary judgment in favor of defendant premises owner, finding that the premises owner had no duty to protect against the criminal acts. On appeal, plaintiff urged this Court to adopt the standard espoused by the Restatement (Second) ofTorts § 344, (1965) which imposes on the premises owner a generalized duty to discover, warn against, and protect against the criminal acts of a third party. This Court affirmed the summary judgment, refusing to adopt theRestatement principle of initial legal liability. Instead, this court espoused the rule imposing no initial legal duty upon the defendant premises owner to protect against the criminal acts of a third party.
There is a singular exception to this general rule, which arises where the "particular criminal conduct was foreseeable."Henley v. Pizitz Realty Co., supra, at 276. Stated differently, "[t]his Court has recognized that a duty may be imposed on a store owner to take reasonable precautions to protect invitees from criminal attack in the exceptional case where the store owner possessed actual or constructive knowledge that criminal activity which could endanger an invitee was a probability." Ortell v. Spencer Companies,supra, at 299.
This Court has recognized that it is indeed difficult to impose such a duty, not yet having been presented the case whose facts command a finding of such a duty.
A second reason we have generally refused to impose liability on premises owners for the criminal acts of third parties is the usual absence of "proximate cause"; it is the independent, intervening criminal act that is generally the proximate cause of plaintiff's injuries and not any action or inaction on the part of the premises owner. In Latham v. Aronov Realty Co.,supra, at 211, this Court quoted Vines v. PlantationMotor Lodge, 336 So.2d 1338, 1339 (Ala. 1976):
 "Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury. If, between the alleged negligent act or omission and the injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961). . . .
 "The key here is foreseeability. This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury. . . ."
In spite of police protection and security services of whatever type or form, criminal acts continue to be committed and this is a problem which confronts this society's citizens individually and as a whole. As this Court pointed out inParham v. Taylor, supra, at 886, quoting fromThoni Oil Magic Benzol Gas Station, Inc. v. Johnson,488 S.W.2d 355 (Ky. 1972):
 " 'In spite of police protection afforded by the state it is a fact of life that citizens are sometimes assaulted, beaten, robbed, raped or murdered at home, at work or on the streets. This is a problem *Page 1372 
which confronts all citizens equally and for which there is often no civil remedy.' "
It is this recognition of the harsh reality that crime can and does occur despite society's best efforts to prevent it that explains this Court's requirement that the particular criminal conduct be foreseeable and that the defendant have "specialized knowledge" that criminal activity which could endanger an invitee was a probability. Stripling v.Armbrester, supra. A common factor used by this court in each of these cases to determine if a particular act is in fact foreseeable is the prior criminal incidents occurring at the premises and which the premises owner was aware of or should have been aware of.
For example, in Latham, supra, the plaintiff-employee sued a shopping mall operator and a security company for injuries he received in the mall parking lot. The plaintiff was assaulted by a third party and hit with a tire tool.
In affirming the judgment in favor of all defendants following a directed verdict, this Court rested its decision on the fact that the plaintiff "failed to introduce evidence to show that the defendants knew, or had reason to know from past experience, that there was a likelihood of conduct on the part of a third person . . . which would endanger the invitee." 435 So.2d at 214. It was on this basis that this Court concluded the criminal conduct was not reasonably foreseeable.
In Henley, supra, the plaintiff was abducted from a Pizitz parking deck and raped. The evidence obtained in discovery revealed that during the 10-year period before the incident, the following crimes had been committed in the parking deck: one battery upon an owner of a car; six breakings and enterings of cars; two robberies; one rape (this occurrence); six thefts; and one other theft in which the thief was shot by a customer. The evidence further showed that the defendant premises owner had notice of these incidents.
In upholding the defendant's summary judgment, this Court concluded that notice of the occurrences cited for the 10-year period previous to the subject incident was insufficient as a matter of law to give rise to a duty to protect the plaintiff from the injuries she suffered at the hands of a third-party criminal.
In affirming a summary judgment for defendant in Ortellv. Spencer Companies, supra, we held that notice of five robberies, one assault with a weapon, one theft, and one burglary on the premises in a three-year period was not sufficient to impose a duty on the premises owner. (InOrtell, evidence was also introduced to show that within that same three-year period, in a two-block area surrounding the premises there had been 33 burglaries, eight acts of malicious mischief, eight robberies, and five aggravated assaults.)
Although this Court has never itself found facts sufficient to warrant the imposition of a duty, we did cite inLatham and Henley cases from other jurisdictions where a duty was found in the face of evidence of a substantial number of prior criminal incidents, e.g.:Morgan v. Bucks Associates, 428 F. Supp. 546 (E.D.Pa. 1977) (77 car thefts and 15 attempted car thefts in one parking lot in an approximate 12 month period); Taylor v.Centennial Bowl, Inc., 65 Cal.2d 114, 52 Cal.Rptr. 561,416 P.2d 793 (1966) (273 police calls and 160 arrests at a bowling alley in a six-month period); and Butler v. AcmeMarkets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982) (seven muggings within a year's time, with five of these committed in evening hours during the four months preceding the attack on the plaintiff).
The number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable. The number and frequency of prior criminal acts are objective, verifiable criteria. When the number and frequency of the crimes on the premises rises, and notice is shown on the part of the owner, *Page 1373 
then, and only then, would criminal activity become reasonably foreseeable.
By imposing an objective standard with regard to the test of foreseeability, this court has implicitly recognized the pitfalls of a subjective standard. By consistently affirming summary judgments and approving directed verdicts in favor of defendants in cases of this kind, this Court has rejected the idea that a difference of opinion on the adequacy of lighting, the presence of security guards, or the number of security guards present at a particular location constitutes a legal basis for denial of a summary judgment or directed verdict.
The uncontroverted evidence in this case is that there had not been a single criminal incident at any prior teen dance at the Gaston motel. This is an objective fact, and Moye submits nothing in opposition to this fact, and Moye offers no other evidence to indicate the defendants were on notice that this criminal act might occur.
In opposition to the motions for summary judgment filed by Gaston and Otis Smith, Moye offered only the subjective opinions of his two experts, Thomas Seales and Clifford Winkfield.
Seales's deposition reflects that he knew of no specific prior criminal act at a teen dance at the Gaston motel prior to the incident made the basis of this suit, and that any opinion that he expressed was not based on any alleged prior criminal activity on the premises.
Winkfield based his opinion, submitted by way of affidavit, on some unverified and unauthenticated crime statistics for the North Precinct of Birmingham for 1979, 1980, and 1981. Moye offered no competent information to prove where the North Precinct is, its size, the business or residential districts encompassed by it, or where in it the particular crimes occurred. More importantly, neither the statistics, nor Winkfield's affidavit, nor Seales's deposition offers one shred of evidence that there had been any prior criminal incidents at the Gaston motel or that Gaston or Otis Smith had notice or knowledge of any such incidents; such is essential to prove a duty "in the absence of some more particularized proof that the defendant actually knew of the impending danger."[1]
Recently, we have been disposing of cases like this with a summary affirmance based upon the long list of authorities previously cited in this opinion. This case deserved more than a summary affirmance because of the tragedy of this death and the circumstances surrounding it.
Justice Shores in Berdeaux v. City National Bank ofBirmingham, supra, at 595, wrote: "Not all problems of a complex society can be solved in civil litigation." The truth of her statement is illustrated by this case.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] The supplemental affidavit of Winkfield filed in support of a motion to reconsider the summary judgment shows that there had been a murder in the lounge of Gaston motel with a security guard present and there had been a robbery of a guest in a room within the 18-month period preceding the shooting of Ms. Moye. This would be insufficient as a matter of law to give rise to a duty to protect Ms. Moye. Henley v. Pizitz Realty Co.,supra; Law v. Omelette Shop, supra.