The plaintiff, Catherine Habich, appeals from a summary judgment entered for the defendant Crown Central Petroleum and a Rule 12(b)(6), Ala.R.Civ.P., dismissal of the defendant Bill Evans. We affirm. *Page 700 
This appeal deals with whether a premises owner is liable to a person injured on his property by the criminal acts of a third party. Ms. Habich was working at Zippy Mart 717, in Ozark, at approximately 3 a.m. on November 11, 1989, when she was abducted and raped. She sued Crown Central Petroleum, Inc., the owner of the Zippy Mart, and Bill Evans, an employee of Crown who managed the territory that included store 717. She alleged negligence and intentional infliction of emotional distress.
The general rule in Alabama is that "a person has no duty to protect another from the criminal acts of a third person."Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370
(Ala. 1986). There are two exceptions to this rule: 1) if the particular criminal conduct was foreseeable, id.; or 2) if a special relationship existed between the parties, Young v.Huntsville Hospital, 595 So.2d 1386 (Ala. 1992). On appeal, Ms. Habich claims that the summary judgment and the motion to dismiss should not have been granted, because, she says, 1) the attack on her was foreseeable and 2) a special relationship existed between her and the defendants.
Ms. Habich failed to present substantial evidence that the particular criminal conduct was foreseeable. She contended that the attack was foreseeable merely because it occurred in a convenience store. On appeal, she listed a number of crimes that had occurred in convenience stores around the state. This was not raised at trial and, therefore, cannot be considered on appeal. However, even if they had been raised at trial, all of the crimes she listed occurred after she was attacked, and none of them occurred in Zippy Mart 717, in the city of Ozark, or even in Dale County. In Moye v. A.G. Gaston Motels, supra, this Court held that "[t]he number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable." 499 So.2d at 1372 (emphasis added). Ms. Habich presented no evidence of prior criminal acts that had occurred at Zippy Mart 717 or in the surrounding area.
Ms. Habich also claimed that there existed between her and the defendants a special relationship that created a duty on their part to protect her against such criminal acts. Zippy Mart 717 was open 24 hours a day, and Ms. Habich worked the early morning shift alone. Her duties included not only serving customers, but also light cleaning and restocking the shelves. In order to restock the shelves, Ms. Habich had to leave the front of the store and enter the stock room to get the merchandise.[1] She was not allowed to lock the door while she was doing this. She claims that not being able to lock the door put her at a higher risk for attack because it could allow a person to sneak up on her. Additionally, she claims that Crown had a policy prohibiting employees from calling the police, without management approval, to report nonviolent offenses.[2] Ms. Habich claims that these two factors created a special duty on the part of Crown to protect her against criminal attack, because, she says, Crown's policies had effectively taken away all means of self-protection. This Court held in Young v. HuntsvilleHospital, supra, that a hospital owed a special duty to an anesthetized patient because that patient was incapacitated and, therefore, unable to protect herself from assault. Ms. Habich argues in her brief that she was equally incapacitated as a result of Crown's policies. This analogy fails. Ms. Habich's restrictions are not comparable to the incapacitation of a sedated patient. Additionally, Ms. Habich was free to choose the time when she would restock the shelves, and Crown restricted calls to the police only in the case of a nonviolent property crime. The employee manual specifically stated that employees were to call the police immediately if they spotted a suspicious individual.
Ms. Habich presented no evidence that the criminal conduct was foreseeable and no evidence *Page 701 
of a special relationship between her and the defendants. Absent one of these factors, Crown had no duty to protect Ms. Habich from the criminal acts of a third person. The summary judgment was properly granted as to the negligence claims.
Ms. Habich also alleged intentional infliction of emotional distress, or the tort of outrage. In order to present a jury question as to outrage, "the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Thomas v. BSE Industrial Contractors,Inc., 624 So.2d 1041, 1043 (Ala. 1993), citing American RoadService Co. v. Inmon, 394 So.2d 361 (Ala. 1981). The second element of this tort has been defined as follows: "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co., 394 So.2d at 365. Ms. Habich presented no evidence that the defendants' behavior even approached the degree of severity required to establish the tort of outrage. The summary judgment was also proper, therefore, as to the claim alleging intentional infliction of emotional distress.
Additionally, the motion to dismiss the claims against Bill Evans was properly granted. Mr. Evans owed to Ms. Habich no duty to protect her against the criminal acts of a third party; thus, she could prove no set of facts that would allow a recovery against him.
Because Ms. Habich presented no substantial evidence creating a genuine issue of material fact and because no set of facts could be proven that would result in a recovery against Mr. Evans, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON and KENNEDY, JJ., concur.