Iris Wright sued Baptist Memorial Hospital ("BMH"), alleging that a man had shot her in BMH's parking lot as she left work one evening. She sought damages on the theory that BMH was liable for the harm caused by the criminal act of that third party. Wright's friend, Brenda Gosa, also sued BMH on the same theory, seeking damages for wanton or negligent infliction of emotional distress; Gosa alleged that she was in the vicinity of the crime against Wright and became frightened — specifically, Gosa claims she was assaulted.
BMH appealed from a judgment for the plaintiff in each case, following a jury trial. The issues on appeal are: 1) May BMH use as an affirmative defense to Wright's claim the fact that it paid workers' compensation to Wright after her injury? We answer that question yes. 2) May Gosa recover damages from BMH based on the criminal actions of a third party that occurred in BMH's parking lot? We answer no. We reverse and remand.
 I. Facts and Procedural History
Wright and Gosa were employees at BMH. On Saturday night, June 22, 1991, Wright and Gosa left work together at 9:30 p.m. and exited the rear of the hospital building into the employee parking lot. They stood in the parking lot and talked with each other for about 10 minutes before walking to their cars. When Wright arrived at her car, a man approached her, grabbed her purse, and shot her in the stomach as he left.
Gosa heard Wright yelling and thought that Wright had slipped and fallen. Gosa went over to assist Wright. Gosa claims that when she reached Wright, the man with the gun was still in the area looking at them and holding the gun.
Wright elected to and did receive workers' compensation disability and medical payment benefits. Thereafter, Wright and Gosa sued BMH, alleging negligence, wantonness, and/or willfulness in failing to provide security. BMH moved for a directed verdict based upon the affirmative defense of immunity (under the Workers' Compensation Act) as to Wright's claim. The trial judge denied BMH's motion. BMH also argued, as a basis for a directed verdict as to both plaintiffs' claims, that the evidence failed to establish that BMH had a duty to protect Wright and Gosa from third-party criminal acts in the hospital parking lot. The trial court denied BMH's motion for a directed verdict. The jury returned verdicts in favor of both plaintiffs. The jury assessed Wright's damages as follows: past damages, $76,380; future damages, $408,978; punitive damages, $402,816; for total damages of $888,174. It assessed Gosa's damages as follows: past damages, $83,614; future damages, $473,424; punitive damages $402,816; for total damages of $959,854. The court entered judgments for the plaintiffs based on the verdicts.
BMH argues, among other things, that, as to Wright, the trial judge erred in denying a directed verdict in favor of BMH, based upon undisputed evidence that Wright elected to and did receive workers' compensation disability benefits and workers' compensation medical payment benefits. BMH also argues that, as to both plaintiffs, the trial court erred in denying its motion for a directed verdict against the claims alleging a failure to protect the plaintiffs from criminal acts of a third party.
 II. Workers' Compensation Defense
The trial court erred in failing to direct a verdict in favor of the defendant, BMH, as to all claims asserted by Wright. It is undisputed that Wright accepted workers' compensation payments from BMH, her employer. This Court has consistently held that "the acceptance of compensation payments under the Work[ers'] Compensation Act constitutes an election that estops the employee from resorting to any other remedy." Davis v. M.C.Dixon Lumber Co., 551 So.2d 305, 306 (Ala. 1989), citing Kelleyv. Dupree, 376 So.2d 1371 (Ala. 1979).
Workers' compensation immunity under Ala. Code 1975, §25-5-53, is, as Wright argues, an affirmative defense. Bechtelv. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala. 1984). The hospital amended its original answer to add an affirmative defense *Page 1149 
of workers' compensation immunity, but Wright contended at trial and again before this Court that the hospital's failure to plead workers' compensation immunity in its original answer precluded the hospital from later amending its answer to include a § 25-5-53 defense. Wright argues that the hospital's delay in pleading the affirmative defense prejudiced her. Wright's argument is without merit.
Rule 15(a), Ala. R. Civ. P., states:
 "Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. . . ."
(Emphasis added.) Unlike parties attempting to amend under the federal version of Rule 15(a), an amending party in Alabama need not show good cause in order to amend its pleadings, as long as the amendment is filed "more than [42] days" before trial is first set. It is up to the party opposing the amendment to come forward, make a motion for disallowance of the amendment, and then demonstrate to the trial court that justice requires that the amendment be disallowed.
The hospital's amendment adding a workers' compensation immunity defense was filed more than 42 days before the trial date set in this case. Wright had the heavy burden of proving that justice required that the hospital's amendment be disallowed. Wright asserted that she was prejudiced by the hospital's delay in filing the amendment because the statute of limitations for bringing a co-employee action against certain hospital employees had run before the amendment was filed. In essence, Wright argues that had she known that the hospital would raise this obviously dispositive affirmative defense of workers' compensation immunity she would have amended her complaint to add co-employee claims, which are not entirely subject to § 25-5-53.
However, nothing prevented Wright from bringing any potential co-employee claims before the statute of limitations ran on those claims. If Wright was prejudiced, she was prejudiced by her own tactical decision not to assert her potential co-employee claims; BMH's delay in adding the affirmative defense was not the cause of Wright's decision not to assert the co-employee claims.
 III. Liability Based on Criminal Acts of a Third Party
It is well settled that absent a special relationship or special circumstances, a person has no duty to protect another from criminal acts of a third person. See Broadus v. ChevronUSA, Inc., 677 So.2d 199 (Ala. 1996); Steiger v. HuntsvilleCity Board of Education, 653 So.2d 975 (Ala. 1995); Saccuzzo v.Krystal Co., 646 So.2d 595 (Ala. 1994); Moye v. A.G. GastonMotels, Inc., 499 So.2d 1368, 1370 (Ala. 1986).
On at least one previous occasion, a plaintiff has urged this Court to adopt Restatement (Second) of Torts, § 344 (1965), which places a generalized duty on the owner of premises to discover, warn against, and protect against the criminal acts of a third party. However, this Court has rejected that doctrine and has retained the general rule that absent a special relationship or special circumstances a person has no duty to protect another from criminal acts of a third person.Broadus, 677 So.2d at 202; Henley v. Pizitz Realty Co.,456 So.2d 272 (Ala. 1984). However, "[t]here is a [single] exception to this general rule, which arises where the 'particular criminal conduct was foreseeable.' " Moye, 499 So.2d at 1371, quoting Henley v. Pizitz Realty Co., 456 So.2d at 276.
In Moye, this Court explained the analysis a court must consider in determining whether to impose liability on a premises owner for the criminal acts of a third party:
 " 'This Court has recognized that a duty may be imposed on a store owner to take reasonable precautions to protect invitees from criminal attack in the exceptional case where the store owner possessed actual or constructive knowledge that criminal activity which could endanger an invitee was a probability.' Ortell v. Spencer Companies, [477 So.2d 299] at 299 [(Ala. 1985)]. *Page 1150 
 "This Court has recognized that it is indeed difficult to impose such a duty, not yet having been presented the case whose facts command a finding of such a duty.
 "A second reason we have generally refused to impose liability on premises owners for the criminal acts of third parties is the usual absence of 'proximate cause'; it is the independent, intervening criminal act that is generally the proximate cause of plaintiff's injuries and not any action or inaction on the part of the premises owner. In Latham v. Aronov Realty Co., [435 So.2d 209] at 211 [(Ala. 1983)], this Court quoted Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala. 1976):
 " 'Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury. If, between the alleged negligent act or omission and the injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken. Mobile City Lines, Inc. v. Proctor, 272 Ala. 217, 130 So.2d 388 (1961). . . .'
 " 'The key here is foreseeability. This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency would reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury. . . .' "
 "In spite of police protection and security services of whatever type or form, criminal acts continue to be committed and this is a problem which confronts this society's citizens individually and as a whole. As this Court pointed out in Parham v. Taylor, [402 So.2d 884, 886 (Ala. 1981)], quoting from Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson, 488 S.W.2d 355 (Ky. 1972):
 " ' "In spite of police protection afforded by the state it is a fact of life that citizens are sometimes assaulted, beaten, robbed, raped or murdered at home, at work or on the streets. This is a problem which confronts all citizens equally and for which there is often no civil remedy." '
 "It is this recognition of the harsh reality that crime can and does occur despite society's best efforts to prevent it that explains this Court's requirement that the particular criminal conduct be foreseeable and that the defendant have 'specialized knowledge' that criminal activity which could endanger an invitee was a probability. Stripling v. Armbrester, [451 So.2d 789 (Ala. 1984)]. A common factor used by this court in each of these cases to determine if a particular act is in fact foreseeable is the prior criminal incidents occurring at the premises and which the premises owner was aware of or should have been aware of."
Moye, 499 So.2d at 1371-72.
In Moye, this Court also discussed several prior cases in which defendants were not held liable for the criminal acts of third parties:
 "In Henley [v. Pizitz Realty Co., 456 So.2d 272
(Ala. 1984)], the plaintiff was abducted from a Pizitz parking deck and raped. The evidence obtained in discovery revealed that during the 10-year period before the incident, the following crimes had been committed in the parking deck: one battery upon an owner of a car; six breakings and enterings of cars; two robberies; one rape (this occurrence); six thefts; and one other theft in which the thief was shot by a customer. The evidence further showed that the defendant premises owner had notice of these incidents.
 "In upholding the defendant's summary judgment, this Court concluded that notice of the occurrences cited for the 10-year period previous to the subject incident was insufficient as a matter of law to give rise *Page 1151 
to a duty to protect the plaintiff from the injuries she suffered at the hands of a third-party criminal.
 "In affirming a summary judgment for [the] defendant in Ortell v. Spencer Companies, [477 So.2d 299 (Ala. 1985)], we held that notice of five robberies, one assault with a weapon, one theft, and one burglary on the premises in a three-year period [emphasis added] was not sufficient to impose a duty on the premises owner. (In Ortell, evidence was also introduced to show that within that same three-year period, in a two-block area surrounding the premises there had been 33 burglaries, eight acts of malicious mischief, eight robberies, and five aggravated assaults.)
Moye, 499 So.2d at 1372.
When this Court wrote Moye, it had never imposed liability upon a premises owner for the criminal acts of a third party:
 "Although this Court has never itself found facts sufficient to warrant the imposition of a duty, we did cite in Latham and Henley cases from other jurisdictions where a duty was found in the face of evidence of a substantial number of prior criminal incidents, e.g.: Morgan v. Bucks Associates, 428 F. Supp. 546 (E.D.Pa. 1977) (77 car thefts and 15 attempted car thefts in one parking lot in an approximate 12 month period); Taylor v. Centennial Bowl, Inc., 65 Cal.2d 114, 52 Cal.Rptr. 561, 416 P.2d 793 (1966) (273 police calls and 160 arrests at a bowling alley in a six-month period); and Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982) (seven muggings within a year's time, with five of these committed in evening hours during the four months preceding the attack on the plaintiff).
Moye, 499 So.2d at 1372.
Since Moye, this Court has recognized at least two situations warranting the imposition of liability. In Saccuzzo v. KrystalCo., 646 So.2d 595 (Ala. 1994), this Court, while finding no liability in the situation there presented, discussed those two situations:
 "One of the few Alabama cases in which the plaintiff has overcome a properly supported summary judgment motion in a situation involving such premises liability is Thetford v. City of Clanton, 605 So.2d 835 (Ala. 1992), where this Court sent the issue of premises liability in an innkeeper-guest situation to a jury. Thetford and her child checked into a hotel in order to get away from Thetford's abusive husband. Thetford registered under an assumed name and specifically told the hotel employees not to tell her husband that she was staying there. When the husband later arrived at the hotel, hotel employees, despite Thetford's earlier instructions, let him into her room, even though she had the door locked. The husband removed Thetford and the child from the premises. Thetford was subsequently murdered by her husband at a different location. The administrator of Thetford's estate sued the hotel. The trial court entered a summary judgment in favor of the hotel. This Court reversed, holding that 'special circumstances' in that case made the summary judgment inappropriate. Although the Court did not specifically say so, the innkeeper-guest relationship in Thetford also comes within the 'special relationship' exception to the general no liability rule.
 "In Young v. Huntsville Hospital, 595 So.2d 1386
(Ala. 1992), we held that a hospital has a duty to protect an anesthetized patient from the criminal acts of a third party. In that case, Young was sexually assaulted by a person who had been seen wandering around the hospital on previous occasions. Young was heavily sedated at the time of the attack and had virtually no chance of defending herself. We held that a 'special relationship' existed in Young because an anesthetized patient is uniquely dependent upon the hospital for protection."
646 So.2d at 596-97.
Clearly, Thetford and Young are distinct from this case. InThetford, the innkeeper was given actual, express, and specific notice that a specific person might attempt to commit a criminal act against another specific person. There was no such notice in this case. In Young, a special relationship was created because the hospital anesthetized the plaintiff and placed her in a situation in which she was "uniquely dependent upon the *Page 1152 
hospital for protection." The plaintiff Gosa was not placed by BMH in a "unique" situation that would impose a special duty upon the hospital.
Therefore, the number and frequency of prior criminal acts in the subject area — the area of BMH's parking lot — is the only basis upon which Gosa could rely in alleging foreseeability that a person would probably be injured by a third party's criminal act while on the defendant's premises:
 "The number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable. The number and frequency of prior criminal acts are objective, verifiable criteria. When the number and frequency of the crimes on the premises rises, and notice is shown on the part of the owner, then, and only then, would criminal activity become reasonably foreseeable.
 "By imposing an objective standard with regard to the test of foreseeability, this court has implicitly recognized the pitfalls of a subjective standard."
Moye, 499 So.2d at 1372-73.
Gosa claims that during the five-year period before the event leading to this case there were 59 criminal events occurring in the area of BMH's parking lot.[1] These events occurred in Sector 4301 of Gadsden, the area and vicinity of the hospital. Sector 4301 includes the hospital and its parking lot, as well as the Hamiter Professional Building, other doctors' offices, the Goodyear Clinic, the Goodyear plant, the apartments across the street from the hospital, and several homes. R.T. 401.
In order to determine whether a particular criminal act was reasonably foreseeable, we must consider the number and frequency of prior criminal acts at the place where the particular criminal act occurred. Moye, 499 So.2d at 1372. InOrtell v. Spencer Companies, 477 So.2d 299 (Ala. 1985), this Court considered whether for the owner of a convenience store it was foreseeable that there was a probability that an employee/clerk of the store would be robbed and forced into the restroom of the store to perform deviant sexual acts with a third-party criminal.
In Ortell, there had been 96 crimes, not including larcenies of vehicles, reported in the two-block area surrounding the store in the three-year period preceding the robbery and sexual abuse of the employee. Nevertheless, this Court stated that the occurrence of 96 crimes in 3 years, an average of 32 crimes per year, did not impose a duty upon the defendant to protect the plaintiff from the crime for which she suffered at the hands of the third-party criminal. Ortell, 477 So.2d at 300. This Court held:
 "After a careful review of all the evidence presented in this case, we find no evidence to support the theory that Spencer Companies had knowledge that criminal activity of the same nature that harmed Ortell was a probability. Because Ortell failed to produce evidence establishing actual or constructive knowledge on the part of the defendant, summary judgment was properly entered in its behalf."
477 So.2d at 300.
In this present case, there were about 57 incidents reported in a five-year period. However, approximately 48 of those incidents involved either thefts of a vehicle or thefts from a vehicle in which the suspect was never seen and in which the suspect never assaulted or threatened the owner or driver of the vehicle. Of the remaining nine incidents, six — including the incident in this case — involved a physical touching. Of those six crimes, only one crime — the crime in this case — involved a gun. In the five-year span of incidents Gosa cites as evidence, there is not one prior incident wherein a person was assaulted or threatened by use of a firearm. *Page 1153 
The nine incidents that did not involve theft of or from a vehicle are as follows: (1) a man sat on a doctor's car in the parking lot and ran off when he was spotted; (2) and (3) two persons burglarized two houses near the hospital, but were never seen; (4) a man robbed a woman of her purse, but no weapons were involved and the robber ran after grabbing the purse; (5) a man punched another man, whom he knew, while they were in the woods north of the hospital[2]; (6) a woman pulled the hair of another woman, whom she knew, in BMH's parking lot; (7) a woman was slapped by a family member in the hospital waiting room after the family received news that a third member of their family had just died; the victim also claimed that the relative who slapped her had threatened other family members with a knife; (8) a woman and her male acquaintance got into an argument in the parking lot, and the man struck the woman; and (9) the robbery and the assault in this case.
Aside from the incident in this case, during the five-year period, there had been a per-year average of only 1.6 crimes involving a physical touching in Sector 4301. Moreover, there had been no crime involving a firearm within the five years preceding the incident in this case. Therefore, we conclude that it could not be considered reasonably foreseeable that the assault against Gosa would occur. (See appendix for the 5-year trend before the crime in this case.)
In Ortell, there had been on average, 32 crimes (excluding vehicle thefts) committed per year in the subject area. In Gosa's case there had been approximately 12 crimes committed per year in the subject area. If vehicle thefts and other property thefts are excluded (as by the reasoning of Ortell), then on average less than two crimes per year had been committed in the preceding five years.
We hold that the number and frequency of crimes were not sufficient to give BMH actual or constructive notice that a third party would assault Ms. Gosa.[3] There had been no shooting in Sector 4301 during the five years mentioned in the record.
The plaintiff Gosa may have a civil remedy against the person who assaulted her. However, she has no claim against BMH. Our law in this area is clear. BMH was entitled to a directed verdict on Gosa's claims alleging negligence, wantonness, and/or willfulness. BMH had no duty to protect her from the criminal acts of the third party, because it was not foreseeable that such criminal acts would occur.
 Conclusion.
We reverse the judgments and remand for the trial judge to enter judgments for the defendant, Baptist Memorial Hospital, as to the claims of both plaintiffs.
REVERSED AND REMANDED.
MADDOX and ALMON, JJ., concur.
HOUSTON, J., concurs specially.
SHORES, KENNEDY, and COOK, JJ., concur in the result.
 APPENDIX
NUMBER OF CRIMES PER YEAR[4]
(Not including the crime in this case, because foreseeability cannot be based on the subject crime.)
1986 1987 1988 1989 1990 1991
Theft of or from vehicles 8 5 10 3 17 6
Other crimes 0 0 3 0 3 2
[1] Gosa claims that there were "59 events" in those five years. However, it appears that she has included two crimes that occurred before the five-year period leading up to the incident in this case. The appendix to this opinion lists 57 crimes and that list is an accurate record of the crimes that occurred during 1991 (the year in which this event happened) and during the five preceding years. For the purpose of this opinion, adding or subtracting two crimes from the 5-year total would not affect the rationale or decision in this case.
[2] The plaintiffs list this incident as one of the incidents occurring in Sector 4301, but, according to the plaintiffs' description of Sector 4301, it does not appear that the "woods" were in Sector 4301.
[3] There is a dispute as to whether Ms. Gosa was assaulted, but for the purpose of our analysis we assume that she was.
[4] There was a total of 57 crimes; see footnote 1. *Page 1154