I must respectfully dissent from the majority opinion affirming the judgment in favor of Rockwell. The Alabama Supreme Court has very clearly limited the liability of a premises owner for the criminal acts of third parties. See Exparte McRae's, 703 So.2d 351 (Ala. 1997), and the cases cited therein. "The general rule in Alabama [is] that absent special relationships or circumstances, a person has no duty to protect another from the criminal acts of a third person." McRae's,703 So.2d at 351 (quoting Moye v. A.G. Gaston Motels, Inc.,499 So.2d 1368, 1370 (Ala. 1986)). Stated another way, a premises owner is under no duty to protect another from the criminal acts of a third person unless a special relationship or special circumstances create such a duty.
Moye is perhaps the case containing the most enlightening discussion of Alabama law concerning the liability of a premises owner for the criminal acts of a third party. In addition to stating the general rule most often cited in premises liability cases, Moye contains an explanation of the reason behind the court's reluctance to assign liability for the acts of another: the absence of (1) duty and (2) proximate cause. Moye, 499 So.2d at 1370. Duty and proximate cause are intertwined and dependent upon the element of foreseeability.Id.
According to the majority in Moye, Alabama law imposes "no initial legal duty upon [a] premises owner to protect against the criminal acts of a third party." Id. at 1371. Moye states an exception to that lack of duty: when the criminal activity is foreseeable. Id. (quoting Henley v. Pizitz Realty Co.,456 So.2d 272, 276 (Ala. 1984)). When criminal activity is foreseeable, a special circumstance exists, which places a duty "to take reasonable precautions to protect invitees from criminal attack" on the premises owner. Id. (quoting Ortellv. Spencer Companies, 477 So.2d 299, 299 (Ala. 1985)). "The number and frequency of prior criminal acts at the place where the injury occurred are used in determining whether a particular criminal act was reasonably foreseeable." Id.
at 1372. As the court pointed out,
 "[t]he number and frequency of prior criminal acts are objective, verifiable criteria. When the number and frequency of the crimes on the premises rises, and notice is shown on the part of the owner, then, and only then, would criminal activity be foreseeable."
Id. at 1372-73 (emphasis added).
Of the few cases in which our supreme court has indicated that liability would be warranted, two involved special relationships. See Thetford v. City of Clanton, 605 So.2d 835
(Ala. 1992); Young v. Huntsville Hospital, 595 So.2d 1386 (Ala. 1992). A third case in which the court found liability warranted is a "special circumstance" case because the circumstances leading up to the incident created in the premises owner the duty to protect the victim. See Nail v.Jefferson County Truck Growers Association, Inc.,542 So.2d 1208 (Ala. 1989).
The plaintiff in Young was an sedated hospital patient who was sexually assaulted in her hospital room. Young,595 So.2d at 1387. The court found that the hospital could be liable for the sexual assault on *Page 1226 
Young because of the special relationship the hospital had with her by virtue of her being sedated and dependent upon the hospital for protection. Id. at 1388-89. The court noted:
 "The basis for the 'special relationship' exception is Restatement (Second) of Torts § 315 (1966), which states:
 " 'There is no duty so to control the conduct of a third person as to prevent him from causing harm to another unless
" '. . . .
 " '(b) a special relationship exists between the actor and the other which gives to the other a right to protection.'
 "Logically, the relationship between a hospital and a sedated or anesthetized patient would be covered under (b) above."
Id. at 1388 n. 3.
The victim in Thetford was an abused woman who was hiding from her abusive husband. Thetford, 605 So.2d at 837. The manager of the hotel cut the door chain of the victim's room and allowed the victim's husband access. Id. The victim left the hotel with her husband and he later fatally beat her. Id.
at 838. The court noted that one major issue in the case was whether the death of the victim at the hands of her husband was foreseeable to the manager. Id. at 841.
 "[I]t is evident that there is an issue of fact about whether [the manager] and [the hotel] knew that [the victim] was an abused wife who was hiding from her abuser. Thetford introduced sufficient evidence to entitle her to reach the jury. The fact that [the victim] notified the hotel that she had been beaten by her husband and was hiding from him for fear of additional abuse would permit a jury to conclude that the hotel manager could foresee another beating by the husband."
Id. However, the court also pointed out the "affirmative duty [of an innkeeper], stemming from a guest's rights of privacy and peaceful possession, not to allow unregistered and unauthorized third parties to be given access to the rooms of its guests." Id. at 838 (quoting Campbell v. Womack,345 So.2d 96, 98 (La.Ct.App.), cert. denied, 347 So.2d 247 (La. 1977)). As was the case with the hospital in Young, the hotel had a special relationship with the victim, i.e., the duty not to allow unauthorized guests access to the victim's room, that takes the case outside of the general rule that a premises owner is not liable for the criminal acts of third parties on its premises.
None of the facts in this case give rise to any special relationship between Rockwell and Whataburger. Unlike the sedated patient in Young, Rockwell was not dependent upon Whataburger for protection. Unlike the hotel in Thetford, Whataburger owed no special duty to Rockwell. Therefore, Rockwell cannot base Whataburger's liability on the special relationship exception stated in Moye.
In addition, the supreme court has indicated that premises owner liability for the criminal acts of third parties was warranted in another unique fact situation involving a shoot-out at the Jefferson County Farmer's Market (the "Market"). Nail v. Jefferson County Truck Growers Association,Inc., 542 So.2d 1208 (Ala. 1989). The shoot-out was the culmination of several weeks of animosity between a holdover tenant at the Market and the new tenant of the property. Nail,542 So.2d at 1210. The holdover tenant, William Nail, refused to vacate the area he had been leasing, located in Shed One, despite the termination of his lease. Id. The new tenant was the son of another tenant, who also rented space in Shed One, Billy Joe Keith. Id. The animosity between the two factions grew worse over a period of several weeks, and the market manager, Bert Swann, was notified of the problem. Id. Swann placed security in Shed One; however, on the day of the shoot-out, one of the security guards that patrolled the Market's gate had called in sick and the security guard assigned to Shed One replaced the sick guard, leaving Shed One without security. Id. Swann did not call in another guard. Id.
On July 4, 1981, the Nail and Keith factions threw firecrackers into each other's produce stands. Id. Nail then fired a gun into the air, apparently attempting to break up the fray. Id.
Billy Joe Keith, however, interpreted the gunshot as an attempt to fire upon him, and he shot *Page 1227 
Nail. Id. Nail returned fire. Id. Besides Nail and Keith, two others were injured. Id.
The court, using the same language from Latham v. AronovRealty Co., 435 So.2d 209, 213 (Ala. 1983), as the majority does, stated that, "in order for the plaintiff to recover in negligence, there must be evidence that the owner knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff." Nail, 542 So.2d at 1211. The court focused on the fact that the Market knew about the growing animosity between the Nail and Keith factions forseveral weeks. Id. As the court noted, the difference between the Nail case and the other cases in which summary judgments for the defendants had been affirmed was that in the other cases, the violent, criminal act "occurred without warning," instead of "ferment[ing] over a period of several weeks." Id.
That difference made the criminal conduct in Nail foreseeable, and, therefore, Nail fell within the special circumstances exception stated in Moye. Id.
Apparently, the majority regards the fact that the Whataburger manager saw the verbal exchange that precipitated the physical altercation as the basis of its finding that the criminal act was foreseeable. I disagree. The situation in this case is unlike that in Nail. No long-term feud existed between Rockwell and his assailants. Instead, four patrons of Whataburger exchanged words, threats, and, ultimately, blows. All of this happened in a matter of minutes. The mere fact that the manager watched the situation develop does not make the resulting criminal act foreseeable for purposes of premises liability under the rationale expressed in Moye.
In fact, the duty imposed in a case involving the special circumstances of foreseeable criminal activity is a duty to take reasonable precautions. "Precaution" is defined as "care taken in advance" or "a measure beforehand to prevent harm or secure good." Wester's Ninth New Collegiate Dictionary (1985). Under the facts in Nail, for example, the Market knew of the growing problem between its tenants and had the opportunity to take measures before the July 4 confrontation to insure safety in Shed One. However, in the present case, Whataburger had no notice sufficient to take measures to prevent Rockwell and his three assailants from fighting. By the time the manager had notice of the impending altercation, the participants had already begun the events that would ultimately lead to Rockwell's injury. That is not the notice anticipated in Moye
and is insufficient to give rise to a duty on the part of Whataburger.
I believe that the majority, in affirming the judgment for Rockwell, incorrectly applies a subjective standard in this case. As stated previously, our supreme court rejected the use of subjective criteria for determining when criminal conduct is foreseeable. Moye, 499 So.2d at 1373. The court noted that differences of opinion concerning such issues as the adequacy of lighting would not be sufficient for the denial of a motion for summary judgment or for directed verdict. Id. The incident that occurred in this case was not, as far as the evidence shows, foreseeable. Rockwell presented no evidence that Whataburger had a history of violent incidents on its property. This incident, like so many others, was sudden and occurred without warning. A few of the patrons of Whataburger took an apparent dislike to one another, the dislike was fueled by angry talk and the introduction of a weapon, and the result was a violent confrontation in which Rockwell was injured.
By determining that liability can and should rest on the determination that the Whataburger manager should have reacted more quickly or should have taken some step that she did not, the majority subjects a premises owner to liability based upon a subjective view of what could have been done. Much like the comparison of the appropriate amount of lighting in a given locale mentioned in Moye, the subjectiveness of this determination does nothing to create a clear understanding of the limited situations in which a premises owner is under a duty to protect his patrons. Instead, the exception to the general absence of duty stated in Moye is made to nearly swallow the rule. The result of the majority's approach is that if anyone on the premises speaks rudely or offensively to another, or even looks at another in the wrong way, the premises owner *Page 1228 
suddenly becomes what Alabama law says it is not, an insurer of its patron's safety. See, generally, Lowe's Home Centers, Inc.v. Laxson, 655 So.2d 943, 946 (Ala. 1994). No matter what the premises owner may have done to prevent the incident and no matter how incident-free the establishment has been in the past, the owner will be liable for the result of any physical altercation on the premises.
None of the evidence in this case convinces me that it is any different from the many other cases where liability was determined to be unfounded. No special relationship exists in this case and no past criminal incidents created in Whataburger a duty to protect its patrons. Therefore, I must respectfully dissent.