ROBERTSON, Presiding Judge
On May 27, 1997, Cynthia Ann Johnston and David Wayne Johnston sued Jeremy Todd Sample; Mike Richardson; Robert Norris; Mr. Mini Mart # 50 d/b/a Citgo Petroleum (“Mini Mart”); and Citgo Petroleum Corporation. The Johnstons sought, damages for injuries received by Mrs. Johnston as a result of an assault by Sample while she was on the premises of a store operated by Mini Mart. At the time of the alleged assault, Norris was the owner of the Mini Mart store and Richardson was the employee on duty at the store. As finally amended, the complaint stated claims against Sample alleging assault and battery and claims against the other defendants alleging negligence and wantonness, *924 negligent and wanton hiring and supervision, negligent and wanton failure to warn, and failure to keep the Mini Mart premises in a reasonably safe condition.
In April 1998, the trial court dismissed the complaint as to Citgo Petroleum Corporation. On May 29, 1998, Richardson, Norris, and Mini Mart moved for a summary judgment on all of the Johnstons’ claims. The court heard the summary-judgment motion on October 29, 1998, and granted it on November 9, 1998. On December 3, 1998, the trial court entered an order pursuant to Rule 54(b), Ala.R.Civ.P., certifying the summary judgment as a final judgment. The Johnstons’ claims against Sample remain pending in the trial court.
The Johnstons appealed to the Supreme Court of Alabama; that court transferred the appeal to this court, pursuant to § 12-2-7, Ala.Code 1975.
The Johnstons argue that the trial court erred in entering the summary judgment for Richardson, Norris, and Mini Mart because, the Johnstons say, they presented substantial evidence to support their claims against those defendants.
The trial court’s summary-judgment order discusses the facts and the legal rationale for the summary judgment:
“The basic facts are that [Mrs. Johnston] was a customer on the premises located in Fultondale, Alabama, known as Mr. Mini Mart # 50. Mike Richardson was the attendant and Robert Norris is the owner of Mr. Mini Mart # 50. The other defendant, Jeremy Todd Sample, was on the premises prior to the arrival of [Mrs. Johnston] and was acting in a suspicious [manner] sufficient for Mr. Richardson to secretly press the ‘panic button’ to alert the police. Although Mr. Sample was acting in a suspicious manner he had not committed a violent act toward any of the customers, and in fact had had a conversation with a City of Fultondale off-duty police officer shortly before the incident involving [Mrs. Johnston]. [Mrs. Johnston] purchased gasoline and came into the store to pay and while waiting for Mr. Richardson to attend to her she was struck unexpectedly and without warning in the face by Mr. Sample. Mr. Sample was arrested and convicted on the assault charge.
“The general rule in Alabama is that ‘absent special relationships or circumstances,’ a person has no duty to protect another from criminal acts of a third person. Moye v. H.E.[A.G.] Gaston Motels, Inc., 499 So.2d 1368 [ (Ala.1986) ]; Broadus v. Chevron USA Inc., 677 So.2d 199 [ (Ala.1996) ]. Special circumstances exist only when the Defendant knew or had reason to know of a probability of conduct by third persons that would endanger the Plaintiff. Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208 [ (Ala.1988) ]. In order for [the ‘special relationship’ exception to apply,] there must be a relationship either between the premises owner and the third party or between the premises owner and the Plaintiff. Young v. Huntsville Hospital, 595 So.2d 1386 [ (Ala.1992) ]. There is no evidence in this case that the special relationship exception applies and therefore, under the general rule absent a special relationship or circumstances, the Defendants had no duty to protect [Mrs. Johnston] from the criminal acts of Sample. Even though Sample was acting in a suspicious manner, this did not rise to the level that a particular criminal conduct was foreseeable or that Mr. Richardson possessed actual or constructive knowledge that there was a probability that Sample would engage in criminal activity which could endanger [Mrs. Johnston].”
Our standard of review of summary judgments is settled:
“A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genu *925 ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required.”
Sizemore v. Owner-Operator Indep. Drivers Ass’n, Inc., 671 So.2d 674, 675 (Ala.Civ. App.1995) (citations omitted). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Edue., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
Although the trial court’s statement of the facts is supported by the record, we must view the record evidence in a light most favorable to the Johnstons. The record reflects that on May 26, 1995, Sample ingested four “hits” of LSD and became delusional and paranoid as a result. Sample’s roommate drove him to an area near the Mini Mart, and Sample wandered into the store from a nearby parking lot. Sample was not known to either Richardson or Norris, and Richardson did not recall having seen Sample before the day of the incident. Richardson stated that Sample entered the store, remained about five minutes, left, and then reentered the store about five minutes before Mrs. Johnston arrived. Richardson stated that he observed that Sample’s eyes were dilated and that he was acting strangely, but Richardson also stated that Sample was not aggressive and that he did not feel threatened by Sample. However, Richardson stated that Sample’s behavior was sufficiently erratic to cause him to suspect that Sample might become a problem and that he therefore stayed behind the counter and activated a silent alarm to summon the police.
Richardson testified that he was on the telephone when he noticed Mrs. Johnston enter the store; he stated that he did not speak to her and that he observed Sample strike her almost immediately after she entered the store. Richardson testified that he telephoned the police directly to be certain that they were coming, even though he believed that they were already en route to the Mini Mart because he had previously pushed the silent alarm. He stated that he did not recall being asked by Mrs. Johnston to call and that he called immediately upon seeing Sample strike her.
Johnston stated that she entered the store to pay for gasoline that she had pumped outside and that she was in the store several minutes standing at the cashier’s counter. Johnston stated that she was unable to get Richardson’s attention because he was engaged in a conversation with a blonde-haired woman. She said she also noticed two men, one of whom was Sample, standing to the right of the counter. The other man was later identified as an off-duty police dispatcher for the City of Fultondale, and the record does not contain any evidence from him concerning this incident. Johnston further stated that when she approached these two men to inquire about Richardson, Sample turned suddenly and struck her in the face. Johnston stated that she was knocked back and that Sample struck her again in the back of the head and knocked her down as she was trying to get away. Sample said he could not recall how long he had been in the store before he struck Johnston; he testified that when he turned around, Johnston was right in front of him and he hit her.
*926 Johnston stated that Richardson did not help her, but that he did suggest that she go back to the office. She said that after she entered the office she became afraid of being trapped by Sample, so she went behind the counter with Richardson. When the police arrived, Sample was arrested and Mrs. Johnston was taken by ambulance to a hospital. Johnston had sustained serious injuries to her face, including fractures of various facial bones.
At the outset, we note that the trial court’s recitation of legal authority is correct.
“ ‘The general rule in Alabama is that “absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person.” Moye v. AG. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala.1986). “Special circumstances” exist only when the defendant “knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff.” Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208, 1211 (Ala.1988). For the “special relationship” exception to apply, there must be a relationship either between the premises owner and the third party or between the premises owner and the plaintiff. Young v. Huntsville Hospital, 595 So.2d 1386 (Ala.1992), citing Restatement (Second) of Torts § 315 (1965). Prior criminal incidents can indicate knowledge on the part of the owner, but such incidents are by no means conclusive on the question of knowledge. Williams v. First Alabama Bank, 545 So.2d 26, 27 (Ala.1989).’ ”
Broadus v. Chevron USA, Inc., 677 So.2d 199, 202 (Ala.1996) (quoting Saccuzzo v. Krystal Co., 646 So.2d 595, 596 (Ala.1994)).
As the trial court noted, there is no evidence in this case of any “special relationship” between the parties. A special relationship is not created by the fact that Mrs. Johnston and Sample were invitees at the Mini Mart store. Ex parte McRae’s of Alabama, Inc., 703 So.2d 351 (Ala.1997).
As our supreme court discussed in Moye, supra, the critical consideration for the imposition of liability for another’s criminal conduct is whether the “particular criminal conduct was foreseeable,” i.e., “in the exceptional case where the store owner possessed actual or constructive knowledge that criminal activity which could endanger an invitee was a probability.” Moye, 499 So.2d at 1371.
Johnston argues that the case of Whataburger, Inc. v. Rockwell, 706 So.2d 1220 (Ala.Civ.App.), cert. denied, 706 So.2d 1230 (Ala.1997), requires the reversal of the trial court’s judgment. In that case, this court affirmed the denial of motions for a summary judgment and for a directed verdict for the restaurant and restaurant employees in light of facts indicating that the plaintiff and other restaurant patrons had been engaged in a violent verbal altercation inside the restaurant that was likely to lead to a physical altercation. Instead of calling the police, as requested by the plaintiff and as required by restaurant policies, the restaurant manager ordered the parties outside, where a fight ensued and the plaintiff was injured.
A comparison of the facts in Whatabur-ger with the facts in this case shows a number of critical differences. In Whata-burger, the plaintiff was directly and repeatedly threatened; however, in this present case, Sample’s erratic behavior although suspicious to Richardson, was not directed at a specific person. This record does not contain facts that would support an inference that Richardson knew or should have known that there was a probability that Sample would strike Mrs. Johnston. It contains no evidence indicating that Sample was likely to commit a violent act. In Whataburger, there were facts that showed that a fight was imminent, and the actions of the restaurant manager in ordering the plaintiff outside and refusing to call the police arguably contributed to the altercation that led to the plaintiffs injury. Sample’s attack on Mrs. Johnston *927 was spontaneous and unprovoked. Nothing in this case supports an inference that an act by Richardson prompted Sample’s assault on Johnston.
All of Johnston’s theories of liability against the defendants in this case require a factual finding that Richardson could have reasonably foreseen that Sample would strike Johnston. We conclude that the evidence would not support such a finding. Accordingly, the general rule of Broadus, supra, is applicable to this case, and Richardson, Norris, and the Mini Mart are not liable for Sample’s criminal assault. The trial court’s judgment is due to be affirmed.
AFFIRMED.
YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in the result.