903 So.2d 68 (2004)
The NEW ADDITION CLUB, INC., an Alabama Corporation, et al.
v.
Linda VAUGHN and O.D. Vaughn, as co-administrators of the estate of Mary Elizabeth Vaughn, deceased.
1022075.
Supreme Court of Alabama.
July 16, 2004.
Rehearing Denied December 17, 2004.
*69 Robert G. Poole of Whittelsey, Whittelsey & Poole, P.C., Opelika, for appellants.
Michael S. Burroughs and John T. Sutton of Burroughs, Guin & Sutton, LLP, Tuscaloosa, for appellees.
SEE, Justice.
This case involves a wrongful-death action brought by Linda Vaughn and O.D. Vaughn, as co-administrators of the estate of their mother, Mary Elizabeth Vaughn. In the early morning hours of April 30, 2000, Peter Crenshaw shot and killed Mary Elizabeth Vaughn in the parking lot of the New Addition Club, a nightclub located in Greene County, Alabama.

I.
On April 29, 2000, Mary Vaughn received her first Social Security retirement check and decided to celebrate that event with her daughter, Linda Vaughn, and her friend, Mary Moore. Mary Vaughn, Linda, and Mary Moore were drinking at the New Addition Club, a nightclub owned by Jessie Green and his siblings. On the night of April 29, 2000, Jessie and his wife were tending bar, and Alex Green, Jessie's brother, was collecting money at the door. No other employees were present at the club. According to their testimony, when Mary Vaughn, Linda, and Mary Moore arrived at the New Addition Club, Peter Crenshaw was shooting pool.
*70 Two other patrons, Henry Winters and Mario Spencer, got into an argument on the dance floor. The argument escalated, and Winters and Spencer left the nightclub. Many of the other patrons, apparently including Crenshaw, followed Winters and Spencer into the parking lot. Spencer disappeared, and Crenshaw attacked Winters. Donna Bruno, Winters's sister, attempted to stop the fight, and she and Crenshaw began to fight. Mary Moore stepped in and stopped the fight. Crenshaw got a gun from his car and fired it, killing Mary Vaughn.
Jessie Green testified that he had not seen Crenshaw inside the club on the night of the shooting and that he was not aware of the fight until someone entered the club and took a pool cue outside. Jessie said that when he went outside to retrieve the pool cue he saw that Mary Vaughn had been shot.
Linda Vaughn and O.D. Vaughn, as co-administrators of Mary's estate, filed a wrongful-death action against the New Addition Club and Jessie Green (hereinafter collectively "the Club"), alleging general negligence and/or wantonness; negligent hiring, training, and/or supervision; negligence and/or wantonness in the context of premises liability; vicarious liability for the negligence of Alex Green and Jessie's wife, the only employees working at the club on the night Mary Vaughn was killed; and violation of the Dram Shop Act. The Club moved to dismiss, and the trial court denied the motion. The Club then moved for a summary judgment. The trial court denied the summary-judgment motion and the case went to trial.
At the close of the Vaughns' case-in-chief, the Club moved for a judgment as a matter of law as to all of the Vaughns' claims. The trial court entered a judgment as a matter of law in favor of the Club as to all counts except the premises-liability claim. The Club called no witnesses and again moved for a judgment as a matter of law as to the premises-liability claim. The trial court denied the motion. On April 3, 2003, the jury returned a verdict in favor of the Vaughns for $240,000. On May 2, 2003, the Club renewed its motion for a judgment as a matter of law or, in the alternative, moved for a new trial. On July 2, 2003, the trial court entered a judgment in favor of the Vaughns for $240,000. On September 11, 2003, the Club appealed.

II.
"`When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate issue is whether the nonmovant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). In an action filed after June 11, 1987, the nonmovant must present substantial evidence to withstand a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. If the question is one of law, this Court indulges no presumption of correctness as to the *71 trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co. 599 So.2d 1126 (Ala.1992).'"
Alabama Dep't of Transp. v. Land Energy, Ltd., 886 So.2d 787 (Ala.2004) (quoting Ex parte Alfa Mut. Fire Ins. Co., 742 So.2d 1237, 1240 (Ala.1999)).

III.
The Vaughns argue that we do not have jurisdiction over the Club's appeal because, they argue, the appeal was not timely filed. "The timely filing of the notice of appeal is a jurisdictional act." Thompson v. Keith, 365 So.2d 971, 972 (Ala.1978), citing Holmes v. Powell, 363 So.2d 760 (Ala.1978).
In the present case, the jury returned a verdict in favor of the Vaughns on April 3, 2003. On May 2, 2003, before the trial court had entered its final judgment, the Club renewed its motion for a judgment as a matter of law pursuant to Rule 50, Ala. R.App. P., or, in the alternative, moved for a new trial pursuant to Rule 59, Ala. R.App. P. The trial court, without ruling on the motion, entered a judgment on July 2, 2003. The Club did not file its notice of appeal until September 11, 2003, more than 42 days after the date the judgment was entered.[1] Although the notice of appeal was not filed within 42 days of the date the judgment was entered, the Club had moved for a judgment as a matter of law or, in the alternative, for a new trial, before the trial court entered the judgment that would have been the subject of such a "postjudgment" motion.
There is no rule that addresses the effect of a prematurely filed postjudgment motion; however, Rule 4(a)(4), Ala. R.App. P., does provide that "[a] notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after the entry and on the day thereof." Moreover, Rule 4(a)(5), Ala. R.App. P., provides that a notice of appeal filed before the disposition of all postjudgment motions shall be held in abeyance until any remaining postjudgment motions are disposed of. Rule 4(a)(5) further provides that such a notice of appeal becomes effective on the date the last postjudgment motion is disposed of.[2]
The problem in the present case lies in determining when the 42-day period allowed for the filing of a notice of appeal begins. Rule 4(a)(3), Ala. R.App. P., suspends the running of the time for filing a notice of appeal until the trial court has disposed of all postjudgment motions.[3] *72 Thus, if a postjudgment motion was properly pending before the trial court, the 42-day period did not begin to run until the disposition of that motion. Rule 4(a)(3) does not expressly contemplate that a "postjudgment" motion could be filed before a judgment was entered. Thus, whether the filing of such a motion suspends the running of the 42-day period for filing a notice of appeal depends on whether such a motion is void and on when such a motion, if not void, is disposed of.
In Board of Water & Sewer Commissioners of Mobile v. Alabama Power Co., 363 So.2d 304 (Ala.1978), the Board of Water and Sewer Commissioners of the City of Mobile, before the trial court had entered its judgment, moved the trial court to reconsider its judgment. Alabama Power argued that the Board's motion for reconsideration of the trial court's judgment was a nullity because, it argued, at the time the motion was filed, there was no judgment for the trial court to reconsider. 363 So.2d at 306. This Court pointed out that Rule 59(e), Ala. R. Civ. P., provides that "a motion to alter, amend, or vacate a judgment shall be served not later than thirty (30) days after entry of the judgment." This Court concluded that "[i]t cannot then be argued successfully that the Board violated Rule 59(e) in serving the motion early." 363 So.2d at 307.[4] Thus, we conclude that a postjudgment motion filed before a judgment is entered is not a nullity; it becomes effective when the judgment is entered.
Pursuant to Rule 4(a)(1) and (3), Ala. R.App. P., the Club had 42 days from the date of the denial of its motion for a judgment as a matter of law, or, in the alternative, a new trial, within which to file a notice of appeal. The trial court did not rule on the Club's motion for a judgment as a matter of law or for a new trial. Therefore, pursuant to Rule 59.1, Ala. R. Civ. P., the motion was denied by operation of law 90 days after it was filed.[5] We hold that if a party moves for a judgment as a matter of law or, in the alternative, for a new trial before the court has entered a judgment, the motion shall be treated as having been filed after the entry of the judgment and on the day thereof. The Club moved on May 2, 2003, for a judgment as a matter of law or for a new trial. The trial court entered a final judgment on July 2, 2003. Thus, the motion is deemed to have been filed on July 2, 2003. Ninety days later, on September 30, 2003, the motion was denied by operation of law. Therefore, the Club's notice of appeal filed on September 11, 2003, was held in abeyance *73 pursuant to Rule 4(a)(5) until September 30, 2003. The notice of appeal became "effective upon the date of disposition of the last of all such motions" on September 30, 2003, and was thus timely filed.

IV.
The Club argues that the trial court erred in denying its motion for a judgment as a matter of law as to the Vaughns' premises-liability claim because, it argues, it was not under a duty to protect Mary Vaughn from the criminal act of a third party, Crenshaw. Specifically, the Club argues that it owed Mary Vaughn no duty because it was not foreseeable that Crenshaw would shoot and kill her.
"[T]he existence of a duty is a question of law to be determined by the trial judge." State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 839 (Ala.1998). "It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person." Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala.1986).
"`Special circumstances' arise when the defendant `knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff.' Knowledge on the part of a premises owner or manager of a probability that harm will be caused to a person on the premises, by the action of a third party, can create a duty on the part of the owner or manager to take reasonable precautions. However, while prior incidents of criminal conduct can indicate the premises owner or manager had notice that someone on the premises could be harmed by the criminal act of a third person, proof of prior criminal acts does not conclusively establish such notice."
Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271, 1274 (Ala.2000) (citations omitted).
In Carroll v. Shoney's, Inc., 775 So.2d 753, 756 (Ala.2000), this Court clarified the requirements for imposing a duty upon a person for the criminal actions of another:
"Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one presented in this case.... First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed `specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a probability."
(Footnote omitted.) This Court stated that the particular criminal conduct in Carroll was murder, and it held that the summary judgment for the defendant, Shoney's, Inc., d/b/a Captain D's Restaurant, was proper because that particular criminal conduct was not foreseeable:
"The facts, viewed in the light most favorable to Carroll, as the nonmovant, suggest the following: On the evening of September 22, 1995, Mildred Harris was working at Captain D's. Adrian Edwards, the relief manager, was also working that evening. Ms. Harris told Edwards that, the night before, her husband, Ronnie Harris, had beaten and choked her and that he had threatened her. Ms. Harris told Edwards that she was afraid of Ronnie Harris and that she did not want to talk to him. Ms. Harris asked Edwards to telephone the police if Ronnie Harris appeared at the restaurant that evening.
"Around 10 o'clock that evening, while Ms. Harris was working in the rear of the restaurant, Ronnie Harris came in. He pushed his way past Edwards and went to the back of the restaurant, *74 where he confronted Ms. Harris. He told Ms. Harris that he was going to `get her.' Edwards and another employee repeatedly told Ronnie Harris to leave, but he continued yelling at Ms. Harris. Edwards telephoned the police; the officer who responded to the call escorted Ronnie Harris from the restaurant. The police detained him briefly; they released him after learning that Captain D's was not going to press charges. Evidence was presented indicating that after that confrontation Ms. Harris asked employees of Captain D's to help her hide from her husband; there was evidence indicating that she was taken to a motel in Montgomery and that her fellow employees lent her enough money to pay for the motel room.
"The next day, September 23, 1995, Edwards reported for work and told the restaurant manager, Rhonda Jones, about the incident that had occurred the night before, i.e., that Ronnie Harris had threatened Ms. Harris, and that the police had to be called to remove Ronnie Harris from the restaurant. Edwards also told Jones that Ms. Harris had said that she was afraid to return to work. At some point after the conversation, Ms. Harris telephoned Jones and asked to be excused from work that evening. Ms. Harris told Jones that she and her husband had been fighting and that she was afraid of him. Jones told Ms. Harris to come into work; and she also told Ms. Harris that if Ronnie Harris showed up, she would telephone the police. Ms. Harris went to work that evening, and was working at the front counter. At some point during her shift, Ronnie Harris walked into the restaurant, pulled out a pistol, and shot Ms. Harris in the back of the head. Ms. Harris died as a result of the gunshot wound."
775 So.2d at 754. This Court concluded:
"Viewing the facts most favorably to Carroll [the administrator of Ms. Harris's estate], as we are required to do, and applying the law to those facts, we conclude that the plaintiff has not presented evidence creating a genuine issue of material fact as to Captain D's liability. The particular criminal conduct in this case was a murder. Unlike Hail v. Regency Terrace Owners Ass'n, [782] So.2d [1271] at [1274] (Ala.1999)..., there was no evidence in this case that any employee of Captain D's was told, or should have reasonably foreseen, that Ronnie Harris would enter the Captain D's restaurant and murder his wife. Admittedly, there was evidence that Mildred Harris and her husband had been fighting, and that she had requested permission to be away from work for that reason, but the evidence also indicated that she had made similar requests on other occasions for the same reason. During his deposition, Carroll, who is Mildred Harris's father, admitted that he had no reason to think that Ronnie Harris would shoot Mildred Harris. Based on the foregoing, we fail to see how Captain D's can be held responsible for Ms. Harris's death. Consequently, we affirm the judgment of the trial court."
775 So.2d at 757.
This Court applied Carroll in Ex parte South Baldwin Regional Medical Center, 785 So.2d 368 (Ala.2000). In Baldwin, the parents of a child who had been sexually molested by a nurse at South Baldwin Regional Medical Center sued the hospital and the nurse alleging assault and battery, negligent supervision, breach of duty to a business invitee, and negligent infliction of emotional distress. On certiorari review, this Court held that the Court of Civil Appeals had erred when it reversed the trial court's summary judgment *75 for the hospital because the Court of Civil Appeals' decision conflicted with Carroll.
"`In any case in which a defendant faces liability for the criminal actions of a third party, the focus is on whether the criminal activity was foreseeable. Notably, the supreme court has held that the particular criminal activity, not just any criminal activity, must be foreseeable. Carroll [v. Shoney's, Inc.], 775 So.2d [753] at 756 [ (Ala.2000) ]; see also Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1373 n. 1 (Ala.1986) (stating that evidence that one murder and one robbery of a guest in a hotel room in the 18 months preceding the homicide of Ms. Moye "would be insufficient as a matter of law to give rise to a duty to protect Ms. Moye"), and Henley v. Pizitz Realty Co., 456 So.2d 272, 273, 277 (Ala.1984) (holding that prior criminal acts on the premises, including "one battery upon the owner of a car; six breakings and enterings of cars; two robberies; ... six thefts; and one theft in which the thief was shot by a customer," were not sufficient to make the rape of Henley foreseeable).'"
Baldwin, 785 So.2d at 370 (quoting Judge Crawley's dissenting opinion in E.P. v. McFadden, 785 So.2d 364, 367-68 (Ala.Civ.App.2000)).
Thus, in order to prove that the Club owed Mary Vaughn a duty to protect her from the actions of Crenshaw, the Vaughns must show: (1) that it was foreseeable that Crenshaw would shoot and kill Mary,[6] (2) that the Club had specialized knowledge that a killing of this type could occur, and (3) that the killing was a probability. See Baldwin, 785 So.2d at 370; Carroll, 775 So.2d at 756. The Vaughns argue that Mary Vaughn's death was foreseeable because the evidence indicated the following: there had been prior incidents at the New Addition Club involving patrons fighting; there had in fact been one shooting on the premises;[7] Crenshaw had once driven his car up to the door of the club and "got out and pulled a shotgun," resulting in Crenshaw's being banned from the club;[8] Crenshaw had once punched his girlfriend while they were in the parking lot of the club; and Jessie Green agreed that he knew Crenshaw was "hot tempered." None of this, howeverthat other patrons of the club had engaged in fights at the club, that someone else had shot another on the premises of the club, that Crenshaw had brandished a shotgun in the parking lot, and that Crenshaw was "hot tempered" and had once punched his girlfriend in the club's parking lotis sufficient to establish that it was foreseeable that Crenshaw would kill Mary Vaughn, that the Greens *76 had "specialized knowledge" that Crenshaw would kill Mary Vaughn, and that the killing was a probability.[9]
The Club was aware that some type of criminal activityan assault and battery[10] had previously occurred, but nothing suggests that the Club knew, or had reason to know, that Crenshaw would kill Mary. The "particular criminal activity, not just any criminal activity," must be foreseeable. See Baldwin, 785 So.2d at 370.
The Vaughns also argue that the Club was negligent in failing to provide adequate security and that this negligence resulted in Mary Vaughn's death. In Moye v. A.G. Gaston Motels, Inc., 499 So.2d at 1373, this Court, upholding a summary judgment in favor of the motel where the decedent's estate sought damages for his death, which resulted from a shooting outside the motel, specifically addressed this argument:
"By imposing an objective standard with regard to the test of foreseeability, this court has implicitly recognized the pitfalls of a subjective standard. By consistently affirming summary judgments and approving directed verdicts in favor of defendants in cases of this kind, this Court has rejected the idea that a difference of opinion on the adequacy of lighting, the presence of security guards, or the number of security guards present at a particular location constitutes a legal basis for a denial of a summary judgment or directed verdict."
This Court has "`consistently and vigorously affirmed summary judgments in favor of the defendant premises owner/employer on the issue of whether the defendant was negligent in failing to protect its invitee/employee from such crimes.'" Carroll, 775 So.2d at 756 n. 2 (quoting Moye, 499 So.2d at 1370).

V.
A negligence action cannot be maintained without a showing that the defendant owed the plaintiff a duty. Rose v. Miller & Co., 432 So.2d 1237, 1238 (Ala.1983). Because the Vaughns are unable to show that the Club had a duty to protect Mary Vaughn from Crenshaw's criminal actions, they cannot prevail in this action. Accordingly, the Club is entitled to a judgment as a matter of law on the Vaughns' premises-liability claim. We reverse the trial court's judgment and remand the cause for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.
HOUSTON, LYONS, and WOODALL, JJ., concur in part and dissent in part.
JOHNSTONE, J., concurs in part, dissents in part, and dissents from the judgment.
HOUSTON, Justice (concurring in part and dissenting in part).
I concur as to the issue of this Court's jurisdiction over this appeal.
I dissent as to the remainder of the opinion. I know the facts in Moye v. A.G. *77 Gaston Motels, Inc., 499 So.2d 1368 (Ala.1986), because I wrote the opinion in that case. The case before us is not Moye v. A.G. Gaston. See Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271 (Ala.1999); Nail v. Jefferson County Truck Growers Ass'n, Inc., 542 So.2d 1208 (Ala.1988) (scintilla rule in effect); and Finley v. Patterson, 705 So.2d 826, 830-34 (Ala.1997) (Houston, J., dissenting).
LYONS, Justice (concurring in part and dissenting in part).
I concur fully in Part III of the main opinion, which holds that the Club's appeal was timely. However, I must respectfully dissent from the conclusion that the judgment is due to be reversed based upon error on the part of the trial court in denying the Club's motion for a judgment as a matter of law.
I adopt Justice Woodall's special writing. I further point out that the Vaughns marshaled the evidence in support of their contention as to the sufficiency of the evidence of Crenshaw's violent propensities in their appellees' brief. The Club did not favor us with a reply brief. Under the circumstances, I cannot join an opinion reversing the trial court's judgment for failing to grant the Club's motion for a judgment as a matter of law based upon the insufficiency of the evidence indicating that the owners of the Club were aware of Crenshaw's violent propensities.
WOODALL, Justice (concurring in part and dissenting in part).
I concur fully in Part III of the main opinion, in which the majority holds that the Club's appeal was timely. However, I respectfully dissent from the holding that the Club is entitled to a judgment as a matter of law.
The record clearly reflects that the Club was well aware of Peter Crenshaw's violent propensities long before Mary Elizabeth Vaughn was killed. Ala. R.App. P. 28(a)(7) clearly required the Club to provide in its appellate brief "[a] full statement of facts relevant to the issues presented for review." However, the Club presented no facts concerning Crenshaw's history of violence. Having chosen to ignore those facts, the Club made no argument that those facts were insufficient to support the verdict for the Vaughns. Instead, after citing general authority relevant to the issues raised, the Club argued only that "[a]lthough there had been two prior shootings outside of the Club, the circumstances of those shootings would not lead to the conclusion that the shooting resulting in the death of [Mary Vaughn] was foreseeable." The Club's brief, at 20. Therefore, I would affirm the judgment of the trial court, because the Club waived the sufficiency-of-the-evidence-of-violent-propensities issue by failing to argue that issue in its brief. See Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 923 (Ala.2002); Smelser v. Trent, 698 So.2d 1094, 1095 n. 1 (Ala.1997).
LYONS, J., concurs.
JOHNSTONE, Justice (concurring in part, dissenting in part, and dissenting from the judgment).
I concur in Part III of the main opinion addressing the timeliness of the appeal. However, I dissent from Part IV and Part V, and I join in the respective special writings of Justice Woodall and Justice Lyons. I maintain the views I expressed in my dissent in Carroll v. Shoney's, Inc., 775 So.2d 753, 757 (Ala.2000).
NOTES
[1] Rule 4(a)(1), Ala. R.App. P., provides:

"Except as otherwise provided herein, in all cases in which an appeal is permitted by law as of right to the supreme court or to a court of appeals, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure."
[2] Rule 4(a)(5), Ala. R.App. P., provides:

"A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59, Alabama Rules of Civil Procedure, shall be held in abeyance until all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59 are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions."
[3] Rule 4(a)(3), Ala. R.App. P., provides:

"The filing of a post-judgment motion pursuant to Rules 50, 52, 55 or 59 of the Alabama Rules of Civil Procedure ... shall suspend the running of the time for filing a notice of appeal. In cases where post-judgment motions are filed, the full time fixed for filing a notice of appeal shall be computed from the date of the entry in the civil docket of an order granting or denying such motion. If such post-judgment motion is deemed denied under the provisions of Rule 59.1 of the Alabama Rules of Civil Procedure, then the time for filing a notice of appeal shall be computed from the date of denial of such motion by operation of law, as provided for in Rule 59.1...."
[4] This Court went on to say that Alabama Power "itself admits in brief that the trial court displayed an inclination to grant its motion for summary judgment on September 7, 1977. A motion is timely even though made before the entry of an order if the court has previously indicated the order which it will make." 363 So.2d at 307. We do not find that the trial court's indication of its inclination is critical to this analysis; however, we note that absent an indication to the contrary the verdict itself was, in this case, some indication of the likely substance of the judgment.
[5] Rule 59.1, Ala. R. Civ. P., provides, in pertinent part:

"No post-judgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days.... A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period."
[6] The requirement that Mary Vaughn's killing was foreseeable does not mean that Crenshaw must have had the specific intent to kill Mary.
[7] Evidence of another shooting across the street from the club was introduced to support the premise that there was a high level of crime in the area. However, in Saccuzzo v. Krystal Co., 646 So.2d 595 (Ala.1994), Christopher Saccuzzo died as a result of a gunshot wound received while he was standing in the parking lot of the Cotton Club, adjacent to a Krystal fast-food restaurant. This Court stated, "Although the plaintiff presented evidence of an extremely high level of criminal activity at Krystal in the 18 months preceding the Saccuzzo incident, this alone could not impute knowledge to Krystal of the probability of a criminal attack on Saccuzzo."
[8] Jessie testified that Crenshaw was barred from the club and that when Jessie or a security guard was manning the door to the club, Crenshaw was not allowed to enter the club. Jessie never admitted that Crenshaw was inside the club on the night Mary Vaughn was killed; he testified that if Crenshaw ever gained entry to the club it was because he was not working the door or because Crenshaw had sneaked into the club.
[9] Even if we were to find that the Club had the requisite specialized knowledge, the Vaughns have not established that Mary's killing was foreseeable or that the killing was a probability.
[10] The Vaughns also argue that Jessie Green failed to take any action in response to the fight between Winters and Spencer on the dance floor; however, it is difficult to see how a fight between Winters and Spencer made Mary Vaughn's killing by Crenshaw foreseeable, gave rise to "specialized knowledge" on the part of the Club, and made Mary Vaughn's killing by Crenshaw probable.