[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10996
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2010
JOHN LEY
CLERK

D. C. Docket No. 7:06-cv-01774-RDP

RICHARD NEWKIRK WILDER,

Plaintiff-Appellant,

versus

SIGMA NU FRATERNITY, INC.,
THETA CHAPTER OF SIGMA NU,
SIGMA NU CHAPTER HOUSE CO., INC.,
KENNETH R. GIPSON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 3, 2010)

Before DUBINA, Chief Judge, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Richard Wilder appeals the district court's grant of summary judgment to the appellee organizations on his personal injury claims. An uninvited guest seriously injured Wilder at a fraternity party, and Wilder sued the local, regional, and national organizations alleging their negligent failure to protect him from the injury. We conclude that the organization members owed Wilder no duty to protect him from the criminal acts of third parties under Alabama law. As a result, Wilder's negligence, *respondeat superior*, negligent supervision, and wantonness claims all fail. Accordingly, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

Kenneth Gipson stabbed Wilder in the head following a Sigma Nu fraternity party in Tuscaloosa, Alabama, causing Wilder serious injury. Wilder was a guest attending the fraternity party. Gipson and Reginald Barnes, who were not invited to the fraternity party, decided to enter the premises toward its conclusion. In his brief, Wilder describes the initial confrontation between Gipson and members of the fraternity:

> Mobley [a fraternity officer], as he was exiting the front door of the Fraternity House, observed Gipson and Barnes entering the Fraternity House. Mobley was supsicious of Gipson and Barnes so he re-entered the Fraternity House in order to observe them. . . .
> Mobley solicited the help of McLin and Elmore [two other fraternity officers] to remove Barnes and Gipson from the Fraternity

2

House.  Mobley, Elmore and McLin confronted Gipson and Barnes in the dining area of the Fraternity House.  At that time, Barnes was pulling two bottles of beer out of an icemaker. . . .

Mobley questioned Barnes and Gipson as to whose beers they were taking and who, if anyone, they knew at the Fraternity House. Mobley, Elmore and/or McLin used profanity and accused Gipson and Barnes of stealing beer.  Mobley, Gipson and Barnes exchanged words, and the conversation became heated and everyone's voices started to escalate. . . .

Gipson then punched McLin in the neck, and a fight broke out between the two of them.  Elmore broke up the fight and pushed McLin to the other side of the dining area.  According to Gipson while in the kitchen area one of the individuals who confronted and represented himself as a member of the fraternity started using racial slurs directed towards him . . . .

At some point in time during these events, Gipson pulled out from his pocket and opened a butterfly knife (the "Knife").  Gipson attempted to back away from the confrontation, using the Knife to ward off the group of individuals in the dining area.

(Appellant's Br. at 8–10 (record citations omitted)).

As Gipson and Barnes exited the house, they encountered more party-goers who had exited the house but remained on the lawn.  That group included Wilder. Gipson issued general death-threats to those in hearing range as he walked toward the street.  Before their exit was complete, Barnes threw at least one beer bottle toward fraternity members; the fraternity members returned in kind.  Violence erupted, and within moments Gipson stabbed Wilder in the head with his butterfly knife.

## II. STANDARD OF REVIEW

3

We review *de novo* a district court's grant of summary judgment. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 871 (11th Cir. 2009). "[W]e view all evidence and factual inferences in the light most favorable to the nonmoving party," as reflected in our reliance on Wilder's filings with this court for the recitation of facts above. *See Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004).

### III. DISCUSSION

Wilder's ability to recover against the local and national fraternity organizations depends initially on his capacity to demonstrate that the fraternity's members acted negligently in allowing Gipson to assault him. *See Ex Parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (explaining that, though wantonness and negligence are distinct tort concepts, they both require the violation or omission of some legal duty); *Univ. of Ala. Health Servs. Found., P.C. v. Bush*, 638 So. 2d 794, 799 (Ala. 1994) ("Under the doctrine of respondeat superior, the master cannot be liable unless one of the master's servants has been found to be negligent."); *Hathcock v. Mitchell*, 173 So. 2d 576, 595 (Ala. 1965) ("[T]he master is not liable for having employed incompetent servants unless their incompetency was the proximate cause of the injury . . . ."). Foundational to the existence of a negligence claim is a legal duty flowing from one to another. "It is the general rule in

4

Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person." *Moye v. A.G. Gaston Motels, Inc.*, 499 So. 2d 1368, 1370 (Ala. 1986).

Wilder argues primarily that "special circumstances" arose on the night of the fraternity party that created a legal duty on the part of the fraternity to take affirmative action to prevent Gipson's assault. In Alabama, these "special circumstances" arise only when the defendant can foresee the probability of conduct endangering the plaintiff. *New Addition Club, Inc. v. Vaughn*, 903 So. 2d 68, 73 (Ala. 2004). This foreseeability requires a three-part showing: "First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed 'specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a probability." *Id.* (internal quotation marks omitted). The Alabama Supreme Court "has rarely held that the danger to an invitee posed by the potential criminal act of a third person was so imminent that the premises owner should have foreseen the eventual consequence." *Hail v. Regency Terrace Owners Ass'n*, 782 So.2d 1271, 1274–75 (Ala. 1999).

Wilder argues that the question of duty, hinged on the issue of foreseeability, is at least a factual question to be resolved by a jury. For the proposition, Wilder relies on the appellate court decision in *Whataburger, Inc. v. Rockwell*, 706 So. 2d

5

1220 (Ala. Civ. App. 1997). In *Whataburger*, the plaintiff sued a restaurant for failing to intervene or solicit aid for him before he was injured in a fight on the premises. Three young men harassed the plaintiff, and despite the plaintiff's request that the manager summon the police, the manager simply told the group to "take it outside." *Id.* at 1222. The court held that the foreseeability of the plaintiff's physical injury was a factual question to be resolved by the jury. *Id.* at 1224.

We acknowledge that the decision in *Whataburger* implies a legal duty to protect others when a premises owner has specific knowledge of probable physical injury awaiting an invitee. But we are doubtful about the viability of its assertion that debatable questions of foreseeability, and thus duty, are reserved for the jury in light of more recent Alabama case law. "In Alabama, the existence of a duty is a strictly legal question to be determined by the court." *Bryan v. Ala. Power Co.*, 20 So. 3d 108, 116 (Ala. 2009) (internal quotation marks omitted). Even when addressing questions of foreseeability in the context of duties to third parties, the Alabama Supreme Court has held that the question of duty "is a question of law to be determined by the trial judge." *New Addition Club*, 903 So. 2d at 73 (internal quotation marks omitted); *see also State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 837–39 (Ala. 1998) (observing the conflicting Alabama case law regarding

6

whether the existence of a duty should be resolved by judge or jury and ultimately holding "that the existence of a duty is a question of law to be determined by the trial judge"). We think Alabama law sufficiently clarifies the court's function as the final arbiter of the foreseeability analysis in the context of determining legal duty. Nevertheless, as we note below, even if *Whataburger* were controlling, our result would be the same.

Wilder attempts to cast the fraternity members as the instigators of both confrontations to argue that the fraternity members had a duty to defuse the situation they created. In his brief, Wilder takes some liberty with the facts to make this characterization—the same facts we quoted from above. Wilder contends that "[t]he Sigma Nu members' racial epithets led to a fight that was serious enough that Gipson threatened the Sigma Nu members with a knife." He further argues that "[t]he evidence, when viewed in a light most favorable to Wilder, shows that one or more of the members called Gipson and Barnes 'niggers,' and incited the altercation with Gipson and Barnes."

Wilder's factual characterizations cross the line from a "favorable light" to an alternate reality. By Wilder's own admission in his brief, the physical confrontation between Gipson and the fraternity members developed after Gipson threw the first punch. Moreover, Wilder's own sequence of events suggests that

Gipson did not hear the alleged racial epithets until after fraternity members had intervened to break up the physical altercation. Wilder's attempt to characterize the fraternity members as the aggressors fundamentally ignores the fact that Gipson and Barnes were trespassers who were confronted while stealing property, a fact admitted by Wilder. At best for Wilder, all of the actors in the initial confrontation were mutually responsible for the physical and verbal altercation.

We now apply the relevant law to these facts to determine whether the fraternity had a duty to protect Wilder from Gipson's later actions. At bottom, we must determine whether a premises owner, aware of a brief physical altercation on his property, has reason to anticipate as probable another, nearly fatal altercation in a different area of the property during the trespassers' retreat. Alabama case law leads us to conclude that Gipson's assault on Wilder was not foreseeable.

In *New Addition Club*, the plaintiff's estate sued a bar after a bar patron murdered the plaintiff. The plaintiff attempted to show that the murder was foreseeable to the bar by introducing evidence that the patron had previously brandished a shotgun at the bar, had assaulted his girlfriend in the bar's parking lot, and was known as "hot tempered." 903 So. 2d at 75. The Alabama Supreme Court held that none of the evidence sufficiently established the foreseeability of the particular murder. *Id.* at 75–76.

8

The facts in *New Addition Club* contrast with those in *Whataburger*, where the plaintiff actually requested that the premises manager intervene and call the police. 706 So. 2d at 1223. The plaintiff contended that the manager failed to call the police before the fight broke out, despite his pleas. *Id.* This, the appellate court concluded, raised the factual possibility that the manager could have foreseen the imminent probability of harm awaiting the plaintiff. *Id.* at 1224.

In this case, the facts surrounding the fraternity member's knowledge of the dangerousness of the situation do not indicate that they were aware of the probability of the specific harm that befell Wilder.[1] In *Whataburger*, the premises manager ignored the plaintiff's pleas for intervention, but no such requests were made here. Moreover, the manager in *Whataburger* had knowledge of the specific circumstances that led to the plaintiff's injuries because she observed both the victim and the assailants interacting before the altercation occurred. Here, however, the fraternity members might have observed a hostile trespasser, but they had no reason to anticipate that his hostility would be taken out on a non-participant in the initial confrontation.

The circumstances here are more like those in *New Addition Club*, where the

---

[1] We note that, even applying the standard set forth in *Whataburger*, we do not believe that a genuine issue of material fact exists about the foreseeability of Gipson's violent assault on Wilder.

9

bar owner had knowledge of the assailant's hostile temperament and possession of a firearm.  Here, according to Wilder, the fraternity members were aware of both Gipson's aggression and possession of a weapon.  But, as in *New Addition Club*, knowledge about temperament and weapons does not create the probability of a particular type of criminal activity.  Any fraternity member's knowledge that Gipson was a hostile, armed individual does not indicate that he should have known the probability that Gipson would stab a bystander in the head during Gipson's exit.  Because there are no "special circumstances" based on which the fraternity or its members should have foreseen the probability of Gipson's assault, we hold that neither the fraternity nor its officers and members owed a duty to protect Wilder from Gipson's criminal acts.[2]

Because no one at the fraternity party owed Wilder any legal duty to protect him from the criminal acts of Gipson, no one acted negligently in failing to do so.  As a result, all of Wilder's claims presented in this appeal must fail.  Without negligent conduct, there can be no direct claim for negligence or for vicarious

---

[2] Wilder argues also that a "special relationship" existed between Wilder and the fraternity because the fraternity incited the hostile situation but failed to intervene.  As we discussed above, Wilder's contention that the fraternity incited the violence conflicts with his own account of the facts.  Moreover, under Alabama law the "special relationship" exception to the duty rule appears to be too narrow to accomodate the facts here.  *See, e.g.*, *Young v. Huntsville Hosp.*, 595 So. 2d 1386, 1388–89 (Ala. 1992) (discussing a "dependence test" for the "special relationship" exception and concluding that a hospital owes a duty of protection to an anesthetized or sedated patient).

liability.  In the absence of negligent conduct, any negligent hiring, training, or supervision could not have caused Wilder's injuries.  Finally, in the absence of a legal duty to protect Wilder, no claim against the organizations for wantonness can survive.

## IV. CONCLUSION

Rarely does a premises owner have a legal duty to protect others from the criminal acts of a third party.  In circumstances like this, only when the party knows or should know that a particular type of crime is probable does it have a duty to protects its guests.  The facts in this case fail to create the kind of foreseeability necessary to impose on the fraternity and its members a duty to protect their guests.  In the absence of a legal duty, there can be no negligence, negligent training, vicarious liability, or wantonness.  Accordingly, we affirm the district court's grant of summary judgment in favor of the Appellees.

**AFFIRMED.**